UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| RANDY ASHLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 25-344-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Randy Ashley filed this action against the United States, alleging a single count of negligence arising from the care he received at the Lexington Veterans Affairs Medical Center ("Lexington VAMC") and from a romantic/sexual relationship with his mental health provider.  [Record No. 1] The United States has moved to dismiss Ashley's Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  [Record No. 10] It argues that the Court lacks subject-matter jurisdiction under the Federal Tort Claims Act ("FTCA").  [*Id.*]  The motion will be granted, in part, and denied, in part, for the reasons that follow.

**I.**

Ashley is a United States Army veteran who has received ongoing care at the Lexington VAMC and its affiliated clinics.  [Record No. 1 at ¶ 8] This matter arises from his treatment there and the aforementioned relationship with his mental health provider, Allie R. Hershberger, Ph.D. ("Dr. Hershberger").  [*See generally id.* at ¶¶ 11–49.]

Ashley completed a mental health intake through the Veterans Integrated Service Network Call Center in Louisville, Kentucky in July 2020.  [*Id.* at ¶ 11] The assessment noted

- 1 -

reports of depression, anxiety, insomnia, and alcohol use. [*Id.*] He participated in a telephone psychotherapy assessment later that month with Judith Campbell, Ph.D. ("Dr. Campbell"), reporting daily struggles with anger, irritability, mood instability, hypersexual behavior, and suspected sex addiction. [*Id.* at ¶ 12] Dr. Campbell diagnosed Ashley with impulse control disorder (sex addiction). [*Id.*]

On August 27, 2020, Ashley was transferred into the care of Dr. Hershberger and began individual therapy. [*Id.* at ¶ 14] During their initial session, he discussed marital problems and a desire to improve his mental health for his family. [*Id.*] Dr. Hershberger did not address Dr. Campbell's prior diagnosis. [*Id.*] At a follow-up session on August 31, 2020, Ashley raised concerns about borderline personality disorder. [*Id.* at ¶ 15] He alleges that Dr. Hershberger diagnosed him with a borderline personality disorder without adequate testing, resulting in improper treatment and medication for over a year. [*Id.* at ¶¶ 15, 48] And he claims that the medication proscribed causes adverse effects, including manic and hypomanic episodes, particularly given his later-identified bipolar condition. [*Id.* at ¶ 26]

Ashley reports that he repeatedly described symptoms consistent with bipolar disorder during therapy sessions with Dr. Hershberger from August 2020 through December 2021. [*Id.*] He alleges that Dr. Hershberger failed to evaluate or document a possible bipolar disorder diagnosis until December 29, 2021. [*Id.* at ¶ 19] A psychiatric evaluation on January 5, 2022, by Dr. Conner included a diagnosis of bipolar II disorder, which was later confirmed through psychological testing in May 2023. [*Id.* at ¶¶ 28, 42] Ashley also contends that Dr. Hershberger failed to address his impulse control disorder and sex addiction diagnosis. [*Id.* at ¶¶ 18, 31, 32, 33, 34]

The day after his final session with Dr. Hershberger (October 1, 2022), Ashley received a late-night text message from her that referenced his online dating profile and expressed interest in a romantic or sexual relationship with him. [*Id.* at ¶ 35] And she invited Ashley to her home. [*Id.*] That same night, Ashley requested that Dr. Hershberger transfer him to another provider. [*Id.*]

On October 3, 2022, Ashley was transitioned from Dr. Hershberger's care to the care of Holly Wilson Szczeblewski, LCSW. [*Id.* at ¶ 36] Dr. Hershberger again invited Ashley to her home two days later. [*Id.* at ¶ 37] He accepted the invitation and went to her home where they engaged in sexual intimacy. [*Id.*] She continued to engage Ashley in "inappropriate text message conversations" for several months. [*Id.* at ¶ 39]

Dr. Hershberger acknowledged the sexual relationship in text messages with Ashley in June 2023 and admitted that she had avoided addressing Ashley's impulse control and sex addiction issues due to her own personal circumstances. [*Id.* at 45–46]

Ashley filed an administrative tort claim with the Department of Veterans Affairs on November 13, 2023, pursuant to 28 U.S.C. § 2675(a). [*Id.* at ¶ 2] He filed this action against the United States alleging one Count of negligence on September 25, 2025. [*Id.* at ¶¶ 50–55] Ashley claims that, in treating him, the defendant failed to exercise "care and skills ordinarily used by healthcare providers engaged in the provision of like or similar patient services in similar localities." [*Id.* at ¶ 52] Specifically, he asserts that the "agents, servants, or employees of the United States at the Lexington VAMC and its affiliates, including but not limited to Dr. Hershberger, while acting within the scope of their employment, violated the applicable standards of medical care." [*Id.* at ¶ 55] He asserts that these individuals negligently failed to diagnose and manage his psychiatric conditions, mismanaged and improperly proscribed

medications, misused certain psychological therapies, exploited the trust relationship, violated professional and ethical boundaries, and engaged in inappropriate sexual conduct with a patient, along with other deviation from the standard of care that may be established through further investigation, expert review, and discovery.  [*Id.*]

## II.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  In other words, they "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  Thus, determining whether subject matter jurisdiction exists is a threshold matter for consideration before addressing the merits of the case.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998); *see also* Fed. R. Civ. P. 12(h)(3) (providing that, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), "where subject matter jurisdiction is challenged under Rule 12(b)(1)[,] ... the plaintiff has the burden of proving jurisdiction in order to survive the motion."  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986)).  A 12(b)(1) motion to dismiss "can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists."  *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

**III.**

The United States brings a facial challenge to Ashley's assertion of subject-matter jurisdiction and moves to dismiss for lack of jurisdiction. [Record No. 10] It argues that the FTCA does not waive sovereign immunity for Ashley's alleged tort because the conduct at issue (i.e., his therapist's sexual relationship with him) falls outside the scope of federal employment. [*Id.*]

Under the FTCA, the United States has waived its sovereign immunity in "certain tort suits." *Allen v. United States*, 83 F.4th 564, 567 (6th Cir. 2023). But absent a waiver, "sovereign immunity shields the Federal Government and its agencies from suit." *Mynatt v. United States*, 45 F.4th 889, 894 (6th Cir. 2022) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475, (1994)). Sovereign immunity implicates the Court's subject matter jurisdiction. *Meyer*, 510 U.S. at 475. Thus, if the United States retains its sovereign immunity with respect to a given claim, the Court lacks subject-matter jurisdiction over that claim. *Id.*

The FTCA permits suits for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). "Whether an employee was acting within the scope of their federal employment ... is governed by the agency law of the state in which the incident occurred." *Laible v. Lanter*, 91 F.4th 438, 445 (6th Cir. 2024) (citing § 1346(b)(1)). Because Ashley alleges conduct occurring entirely in Kentucky, this Commonwealth's law applies. [Record No. 1 at ¶¶ 5–6, 8–9]

Under Kentucky law, "[a]n employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control." *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 51 (Ky. 2008). For

intentional torts, the "focus is consistently on the purpose or motive of the employee in determining whether he or she was acting within the scope of employment." *Id.* at 51 (citing *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005)); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 566 (6th Cir. 2008) ("In *Patterson v. Blair*, the Kentucky Supreme Court clarified that a court must 'focus on the motive of the employee in determining whether he or she acted within the scope of the employment.'").  Generally, an employee acts within the scope of his employment when his "purpose, however misguided, is wholly or in part to further the master's business." *Flowers*, 513 F.3d 546, 566 (quoting *Patterson*, 172 S.W.3d at 369).

By contrast, an employee has "departed from his employment" when he or she "acts purely from personal motives ... which [are] in no way connected with the employer's interests[.]" *Id.* (quoting *Patterson*, 172 S.W.3d at 369).  Thus, "to be within the scope of its employment, the conduct must be of the same general nature as that authorized or incidental to the conduct authorized." *Flowers*, 513 F.3d at 567 (quoting *Osbourne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000)).

The United States characterizes Ashley's Complaint as based solely on the alleged sexual relationship and argues that such conduct falls outside the scope of employment. [Record No. 10 at 1–2; *see* Record No. 13 at 1–2.] Ashley responds that the government mischaracterizes his claims.  [Record No. 11 at 2] He asserts that, although the sexual relationship is part of the case, his claims arise from a broader course of negligent mental health treatment at the Lexington VAMC.  [*Id.* at 1–2] According to Ashley, the Complaint alleges multiple independent acts of negligence (including negligent diagnosis, psychotherapy, and medication management) committed within the scope of authorized clinical care.  [*Id.* (citing Record No. 1 at ¶¶ 11–12, 14–16, 18–21, 26–28, 42)] But the United States disputes

that characterization and argues that Ashley has not alleged claims wholly independent of the sexual relationship. [Record No. 13 at 1–3]

As a matter of law, a therapist's sexual relationship with a patient falls outside the scope of employment. *Flowers*, 513 F.3d at 566; *see Osborne*, 31 S.W.3d at 915 (holding that a priest providing marriage-counseling services was not acting within his "scope of employment" when he "engaged in an adulterous sexual relationship" with a married woman seeking counseling). Such conduct is neither authorized nor incidental to the employer's business and is motivated by purely personal interests rather than any purpose to serve the employer. *See Osborne*, 31 S.W.3d at 915; *Scottsdale Ins. Co.*, 513 F.3d at 567–68 ("Engaging in sexual relations with a patient is not motivated by a desire to serve the interests of the therapist's employer, but rather, is designed 'to satisfy the employee's own sexual proclivities.'" (quoting *Am. Gen. Life & Acc. Ins. Co. v. Hall*, 74 S.W.3d 688, 692 (Ky. 2002)). Such a relationship and conduct "cannot be considered within the therapist's scope of employment under Kentucky law." *Scottsdale Ins. Co.*, 513 F.3d at 567–68.

Based on the foregoing authority, the Court lacks subject-matter jurisdiction over the negligence claim to the extent it is based on the sexual relationship between Ashley and Dr. Hershberger. However, to the extent that Ashley alleges independent acts of negligence within the scope of authorized medical care, those claims are not subject to dismissal at this stage.

The Court rejects the United States' interpretation that the Complaint relies solely on the sexual relationship. Instead, the undersigned concludes that the Complaint alleges independent negligence, including negligent diagnosis, psychotherapy, and medication management. [*See* Record No. 1 at ¶¶ 14–15, 18–19 ,26, 43, 48, 55.]

- 7 -

- 8 -

**IV.**

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that the defendant's motion to dismiss [Record No. 10] is **GRANTED**, in part, and **DENIED**, in part, consistent with this Memorandum Opinion and Order.

Dated: April 23, 2026.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky